IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| KAY GRAYSON, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| CAROLYN W. COLVIN, Acting | * | No. 3:13CV00269-JJV |
| Commissioner, Social Security | * | |
| Administration, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kay Grayson appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for supplemental security income ("SSI") benefits under Title XVI of the Act. For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.    BACKGROUND**

On January 11, 2011, Ms. Grayson protectively filed for DIB and SSI benefits due to back, neck, knee, and ankle pain, arthritis, carpal tunnel, high blood pressure, high cholesterol, and depression. (Tr. 67-68, 202) Her claims were denied initially and upon reconsideration. At Ms. Grayson's request, an Administrative Law Judge ("ALJ") held a hearing on August 22, 2012. (Tr. 63-112) Because of issues related to the vocational expert's ("VE") testimony at the first hearing, a second hearing was held on November 30, 2012, where Ms. Grayson appeared with her lawyer. (Tr. 12, 33-42) At the hearings, the ALJ heard testimony from Ms. Grayson and a VE.

The ALJ issued a decision on January 25, 2013, finding that Ms. Grayson was not disabled under the Act. (Tr. 12-27)  The Appeals Council denied Ms. Grayson's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-4)

Ms. Grayson, who was fifty years old at the time of the hearing, has a GED. (Tr. 67)  She has past relevant work as a inventory taker, shoe machine operator, print binder, childcare worker, sales clerk, die cutter, and housekeeper. (Tr. 37-38, 102-105)

## II.    DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

The ALJ found that Ms. Grayson had not engaged in substantial gainful activity since May 13, 2010, and she had the following severe impairments: degenerative disc disease in her cervical and lumbar spine, degenerative joint disease in both knees, benign essential hypertension, obesity, and depression. (Tr. 14)  However, the ALJ found that Ms. Grayson did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (Tr. 15)

According to the ALJ, Ms. Grayson has the residual functional capacity ("RFC") to perform light work, but she would be limited to only occasional stooping, crouching, kneeling, crawling and balancing, and she would be limited to performing only simple routine tasks with simple, direct, and concrete supervision. (Tr. 17)  The VE testified that Ms. Grayson could perform her past relevant

---

[1]The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(a)-(g) (2005).

[2]20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

work as a hand stitcher or a housekeeper. The VE also testified that another job available with these limitations was poultry line worker. (Tr. 39)

After considering the VE's testimony, the ALJ determined that Ms. Grayson could perform a significant number of jobs existing in the national economy, and found that Ms. Grayson was not disabled.

## III.  ANALYSIS

### A.  Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### B.  Ms. Grayson's Arguments for Reversal

Ms. Grayson asserts that the Commissioner's decision should be reversed because it is not support by substantial evidence. Specifically, Ms. Grayson contends that the ALJ erred because his determination that she could perform her past relevant work is not supported by substantial evidence. (Doc. No. 11) She points out that from "September 2009 through December 2012, [she] was treated on more than 25 occasions . . . for chronic and severe pain in her neck, back, and knees . . . ." (*Id.*)

In April 2011, Dr. Kumar, a non-treating doctor, determined that Ms. Grayson would be capable of light work. (Tr. 364-368). Just a month later, a different non-treating physician, Dr. Norcross, determined that Ms. Grayson would be capable of only sedentary work with postural limits because of the degenerative disc disease in her knees and spine, along with her morbid obesity. (Tr. 378) This finding was affirmed in July 12, 2011, by a reviewing doctor. (Tr. 382) In the paragraph where the ALJ discusses the RFC findings by the non-treating physicians, there is no reference to Dr. Kumar's light work finding. Instead, the ALJ mentions only the non-examining doctors' findings that Ms. Grayson is capable of sedentary work. The following standard opinion language immediately follows:

> Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions, as explained throughout this decision.

(Tr. 25) Yet, the ALJ ultimately determined that Ms. Grayson was capable of light work, not sedentary work. It would have been helpful, and clearer, if there was an explanation as to why the ALJ credited Dr. Kumar's finding, rather than Dr. Norcross's. Still, the Court concludes that this was a stylistic oversight, since the ALJ repeatedly mentions Dr. Kumar's findings and compares them to the medical records in his opinion. Also, Dr. Norcross's assessment was a checklist based on a review of the records, but Dr. Kumar performed an actual physical assessment. *McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011) (finding that a non-examining physician's opinion is afforded less weight when done in a checklist format assessment and there are subsequent medical records that were not considered). Even more importantly, the ALJ's light work determination is supported by substantial evidence in the record. A few examples:

(1) There are numerous medical records that followed the non-examining doctors' decisions, so the records were not considered during their assessment.[3] However, these records were relied on by the ALJ to discount the earlier RFC determinations and question the alleged severity of Ms. Grayson's conditions:

- On June 16, 2011, Ms. Grayson reported that she was no longer seeing the chiropractor, but still had neck pain. The notes also indicate that she "does not want any studies." (Tr. 381)

- A January 19, 2012, x-ray of lumbar spine was unremarkable, and the treating doctor concluded that the cause of her low back pain was likely a back sprain. (Tr. 394, 395)

- A May 16, 2012, CT of the spine revealed disc bulges at L3-L4 ("minimal), L4-L5 ("moderate"), and L5-S1 ("mild"). (Tr. 415) The doctor found that the "mild attenuation of both lateral recess L4-L5 may affect the descending L5 nerve roots. Mild encroachment on both neural foramina at L5-S1." (Tr. 416) There were no issues with her cervical spine. (Tr. 417-418)

- After the May 2011 findings, Ms. Grayson's visits to the doctor were for refills and a few isolated emergency room visits.[4] For example, the primary reason for near-

---

[3]The July 2011 "affirming opinion" does not carry much weight since it summarily affirmed the May 2011 opinion. *Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir.2001) (weight accorded to opinions from non-examining sources depends upon degree to which they provide supporting explanations).

[4]On January 19, 2012, Ms. Grayson reported to the ER because of a radiating pain in her right flank. (Tr. 391-394) On May 16, 2012, Ms. Grayson reported to the ER after a fall getting out of the shower. (Tr. 408-412)

>monthly primary care visits throughout 2012 was refills. (Tr. 400, 402, 405, 422, 429, 432, 444, 448)  In the early months of 2012 she typically reported pain being a 4/5, but by July, she advised that it was only a 2/5. (*Id.*)  In August, it was up to a 5/5, but her follow-up appointment was two months later, when she again reported pain of 5/5.  (Tr. 441, 444)  By December, it was back down to 3/5.  (Tr. 448)   Throughout the year, she had "normal [range of motion] of spines, no limb abnormalities" (*Id.*)

- In May 2012, she reported "intense pain in the back of the knee" that was worse when stooping or bending, but she doesn't remember any injury. (Tr. 425)  Again, she got only refills and was told to follow up in four weeks.  In June, she mentioned only her back pain, not her knee.  (Tr. 422)

(2)   It also appears that Ms. Grayson's conditions are controlled with medication.  *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling."). Importantly, Ms. Grayson reported in August 2012 that her chronic shoulder pain was "well controlled on current regimen." (Tr. 429)  There was no mention of her knees or back.  In December 2012, she again reported that she was "doing well with current medication/treatment" but requested refills.  An examination revealed normal range of motion in the spines, but found pain with range of motions to both shoulders and limitation of motion upward.  (Tr. 448) Yet, "follow-up, if no better" was scheduled for four weeks. (Tr. 449)  She also testified that her blood pressure and depression were both controlled with medication.  (Tr. 81, 93)

(3)   The ALJ noted treatment has been "essentially routine and/or conservative in nature." (Tr. 23)  He noted that though she claimed to be in pain every day, there was "no indication of any

physical therapy, TENS unit, or referrals to orthopedist, neurologist or pain management physician. The claimant was being treated with pain medication, on an as needed basis from her primary care physician." (*Id.*) Even if Ms. Grayson's conditions warranted something more, it appears that she was not interested. As mentioned earlier, she did "not want any studies." (Tr. 381)

      (4)    The ALJ also recognized that no treating physician limited her ability to work. Ms. Grayson argues that no physician was asked to make this determination. However, the records reveal that her doctors were aware that she was seeking a disability determination; still no treating physician placed work-related limitations on Ms. Grayson. (Tr. 381, 385) *Baldwin v. Barnhart*, 349 F.3d 549, 557 (8th Cir. 2003) (finding that one supporting factor for the ALJ's decision was that no "independent physicians restricted or limited" the claimants activities).

      (5)    The ALJ considered Ms. Grayson's activities of daily living. He noted that she could prepare simple meals, do some housework, shop for food and household items, pay bills, work puzzles, etc. (Tr. 22) Though these activities standing alone may not discredit the severity Ms. Grayson's impairments, they were properly considered by the ALJ in addition to the other medical evidence.

      (6)    On August 20, 2010, the chiropractor noted that Ms. Grayson's back pain for all sections of her back was "resolved." (Tr. 361) He also released her from further care. (Tr. 363) As mentioned earlier, in June 2011, she reported neck pain, but indicated that she was no longer seeing the chiropractor. (Tr. 381)

      (7)    The ALJ also noted that Ms. Grayson "worked only sporadically" before her alleged onset date, which raises concern about whether her "unemployment was actually due to medical impairments." (Tr. 22) See *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack

of work history may indicate a lack of motivation to work rather than a lack of ability.").

## IV.    CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision.

Accordingly, the Commissioner's decision is affirmed and Ms. Grayson's Complaint is dismissed with prejudice.

IT IS SO ORDERED this 18th day of August, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE